UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

PROGRESSIVE CASUALTY INSURANCE COMPANY,

        Plaintiff,

vs.

BAM PRODUCE, INC., MANUEL OSVALDO NUNEZ, JR., MTLR CORP., and RON COUCHMAN,

        Defendants.

Civil Action No. 1:17-cv-00289

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

Plaintiff Progressive Casualty Insurance Company ("Progressive") commenced the present action seeking a declaration that a commercial motor vehicle liability policy that it issued to a produce wholesaler provides no liability coverage with respect to an underlying motor vehicle accident. As demonstrated below, the accident in question did not involve any motor vehicle covered under the Progressive policy. Accordingly, Progressive is entitled to summary judgment declaring that it has no obligation to defend or indemnify any of the defendants in the underlying action.

**FACTUAL BACKGROUND**

A.    The Application for Coverage & The Progressive Policy

In its application for coverage with Progressive, dated June 7, 2016, BAM Produce, Inc., of Huntington Bay, New York, described itself as operating in the "Wholesale trade". *See*

1

Declaration of Michael X. Danquer, dated July 11, 2017 (hereinafter, "Danquer Dec.") at ¶ 3 and Exhibit "B." The application sought coverage for two trucks that BAM operated, a 2010 International semi-tractor, VIN 1HTHXAHR6AJ221527, and a 2004 Mack semi-tractor, VIN 1M2AE05C04N019743. *Id.* The application included a request to name "MPLR Corp." (sic) of Kingsland Avenue in Brooklyn as loss payee for the 2004 Mack.

In addition to the two trucks scheduled on the policy, BAM utilized at least one other vehicle in its business, a 2006 International semi-tractor, VIN 1HTHXAHR76J253197 (the "2006 International"). Rental records, which defendant MTLR has provided to Progressive, show that the 2006 International was leased by MTLR to BAM on May 13, 2015, more than a year before it submitted the application for coverage with Progressive. *See* Danquer Dec. at ¶¶ 10-11 and Exhibit "G." However, BAM did not list the 2006 International in its application. *See* Danquer Dec. at ¶ 12 and Exhibit "B." The Progressive policy, number 03813228-0, went into effect on June 7, 2016 and scheduled only the two vehicles that had been listed on the application. *See* Danquer Dec. at ¶ 2 and Exhibit "A." The policy also listed two drivers who operated the scheduled autos, Rey Urbina and Dionisio Minaya, who were the only drivers identified by BAM on the application. *See* Danquer Dec. at Exhibits "A," "B."

The Accident

On Friday, July 15, 2016, defendant Manuel Osvaldo Nunez, Jr., operating the 2006 International, picked up a load of produce at Hunts Point Market in the Bronx, and set out to deliver the produce to several of BAM's customers. *See* Danquer Dec. at ¶ 14. Nunez had been employed as a driver by BAM for about nine years. *See* Danquer Dec. at ¶ 15. In spite of that, BAM had failed to identify him on the June, 2016 application as one of its drivers.

After picking up the produce, Nunez proceeded north on Coster Street in the Bronx. At

the intersection of Coster and Oak Point Avenue, Nunez's vehicle came into contact with a motorcycle operated by Ron C. Couchman.  *See* Danquer Dec. at ¶ 16.  The police report (at page 2) identified the 2006 International as the rig that Nunez was operating.  *See* Danquer Dec. at ¶ 7 and Exhibit "E."

### The Underlying Lawsuit

In July, 2016, Couchman filed suit against Nunez and MTLR in the New York State Supreme Court, Kings County.  *See* Danquer Dec. at ¶ 6 and Exhibit "D."  The complaint was later amended to add BAM as a defendant.  *See* Danquer Dec. at ¶ 9.  Couchman alleges that he was seriously injured as a result of Nunez's negligence, and that of MTLR and BAM.  *See* Danquer Dec. at Exhibit "D."

Progressive denied in writing that it provides coverage for the underlying loss, but pending resolution of its projected declaratory judgment, it agreed to offer the defendants a courtesy defense.  *See* Danquer Dec. at ¶ 8 and Exhibit "F."  Progressive hired the law firm of Brand, Glick & Brand to appear for the defendants.  *Id*.

Progressive commenced this action on January 18, 2017, seeking a declaration that the policy that it issued to BAM provides no coverage to any person or entity for any claim arising out of the underlying accident.

**ARGUMENT**

**PROGRESSIVE IS ENTITLED TO JUDGMENT
DECLARING THAT IT HAS NO DUTY
TO DEFEND OR INDEMNIFY THE
DEFENDANTS IN THE UNDERLYING ACTION**

A.  Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure Rule 56(c), summary judgment should be granted to the moving party if the Court determines that the evidence produced by the movant "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (quoting Fed. R. Civ. P. 56(c)). The mere existence of disputed facts will not preclude entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). Rather, only disputes over facts that may affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Ibid.*

A movant has the initial burden of establishing the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322–23. That burden can be satisfied by demonstrating the absence of evidence to support the non-movant's case. *Id.* at 325. Once the moving party has met its burden, "its opponent must do more than simply show there is some metaphysical doubt as to these material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted).Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Id.* at 586–87 (1986) (citation omitted).

4

B.  Since the Underlying Loss Did Not Involve a Covered Auto,
    the Progressive Policy Provides No Coverage

The key provision of Progressive's liability coverage under its commercial auto policy issued to BAM is found at Part I – LIABILITY TO OTHERS (p. 6), "INSURING AGREEMENT – LIABILITY TO OTHERS":

> Subject to the Limits of Liability, if **you** [i.e., BAM] pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and covered pollution cost or expense, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**.

Taking the opening provisions in turn, BAM purchased liability limits of $500,000 (p. 2 of Commercial Auto Insurance Coverage Summary). (The word "you" is defined in the policy's General Definitions p. 5, definition 17, as the named insured shown on the declarations page, that is BAM). The policy covered only the 2010 International and the 2004 Mack trucks, neither of which was involved in the underlying loss.

As explained, *supra*, BAM did not schedule, and paid no premium for, the 2006 International at policy inception, although it had been in BAM's possession for over a year by June, 2016. The vehicle was added to the policy on October 21, 2016, four and a half months after inception and more than three months after the underlying loss.

Accordingly, on the date of loss the 2006 International did not qualify as an "insured auto." The phrase "insured auto" is defined in General Definitions, pages 2-3 of the policy, paragraph 5. Three categories of vehicles may qualify as "insured autos", but the 2006 International falls within none of the categories.

5

Definition 5(a) defines "insured auto" to mean "any auto specifically described on the declarations page."  As of the date of loss (July 15, 2016), only two vehicles - the 2010 International and the 2004 Mack - were scheduled.  (Declarations pages 2-3, dated June 15, 2016.)  BAM added the 2006 International to the policy more than three months <u>after</u> the accident, effective October 21, 2016.  (Endorsement to Declarations page, dated October 22, 2016, page 3.)  The 2006 International was not specifically described on the policy on the date of loss, and was not an insured auto.  *Tower Ins. Co. of N.Y. v. Superior Laundry Servs., LLC*, 2009 N.Y. Slip Op 31993(U), 2009 N.Y. Misc. LEXIS 6082 (Supreme N.Y. County, Sept. 2, 2009); *August v. New York Central Mutual Fire Ins. Co.*, 98 N.Y.2d 632, 772 N.E.2d 1109, 745 N.Y.S.2d 751 (2002); <u>see</u>, <u>also</u>, *Empire Fire & Marine Ins. Co. v. Eveready Ins. Co.*, 48 A.D.3d 406, 408, 851 N.Y.S.2d 647, 649 (2d Dep't 2008); *Andrew Mundo Inc. v. Liberty Mut. Group*, 4 A.D.3d 307, 308, 772 N.Y.S. 2d 331 (1st Dept. 2004).

Under Section 5(b) of the definition, newly owned vehicles (even if not scheduled on the date of loss) can qualify if four conditions are met:  1. the vehicle is acquired during the policy period; 2. Progressive already insures all vehicles owned by the insured; 3. the newly acquired auto is not insured under any other policy; and 4. the insured tells Progressive within 30 days of acquisition that it wishes to add the vehicle to the policy.

The 2006 International cannot qualify as a newly-acquired vehicle since (in addition to the fact that BAM never acquired ownership – coverage can only become available "on the date you become the owner") the 2006 International came into BAM's possession on May 13, 2015, prior to the inception of the policy (June 7, 2016); and Progressive was of course, not notified about the 2006 International within 30 days of policy inception, let alone within 30 days of "acquisition."  For all of these reasons, then, the 2006 International did not qualify as a newly-

acquired auto.

Subsection 5(c) covers "replacement autos" that are: 1) acquired during the policy period and 2) which replace one of the scheduled autos on the policy which has broken down or is otherwise inoperable. Again, this provision is not satisfied here where the lease of the 2006 International was effected a year prior to the policy inception. (Thus it was not "acquired" during the policy period). In addition, a vehicle added to the fleet in May, 2015, could hardly be a replacement for the two vehicles that BAM identified as its fleet in June, 2016.

In short, the 2006 International was not scheduled on the Progressive policy, was not "newly-acquired" and was not a newly-acquired replacement for either of the two scheduled vehicles. That is the beginning and end of the coverage analysis. Since the 2006 International that Nunez was operating at the time of the loss was not an insured auto, Progressive has no coverage for the loss. *See Clarendon Nat'l Ins. Co. v. Hartford Ins. Co.*, 1998 WL 230936, 1998 U.S. Dist. LEXIS 6683 (S.D.N.Y. 1998) (Vehicle was not covered under Clarendon policy so Clarendon provided no coverage); see, generally, *Allstate Indem. Co. v. Cruz & Cruz, Inc.*, 2011 WL 181446, 2011 U.S. Dist. LEXIS 4993 (S.D. Fla. 2011); *Harco Nat'l Ins. Co. v. Arch Specialty Ins. Co.*, 2008 U.S. Dist. LEXIS 30629, *22 (S.D.N.Y. Apr. 9, 2008); *Richmond Farms Dairy, LLC v. National Grange Mut. Ins. Co.*, 60 A.D.3d 1411, 1414-1415, 875 N.Y.S.2d 681, 684-685, (4th Dep't 2009).

C. <u>Progressive Has No Duty to Defend the Underlying Action</u>

The second paragraph of the coverage grant (Part I, p. 6) of the Progressive policy provides

> We [Progressive] will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payment, after the Limit of Liability for the coverage has been exhausted by payment of judgments or settlement.

Since, as set out in Part B, <u>supra</u>, the underlying loss is not covered by the Progressive policy, Progressive has no obligation to defend the underlying action. *See Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 445, 779 N.E.2d 167, 171, 749 N.Y.S.2d 456, 460 (2002) ("This Court has stated that 'an insurer can be relieved of its duty to defend if it establishes as a matter of law that there is no possible factual or legal basis on which it might eventually be obligated to indemnify its insured under any policy provision' (*Allstate Ins. Co. v Zuk*, 78 N.Y.2d 41, 45, 571 N.Y.S.2d 429, 574 N.E.2d 1035 [1991]); *Charter Oak Fire Ins. Co. v QBE Ins. Co.*, 901 N.Y.S.2d 905, 905 (Sup. Ct. N.Y. Cnty. 2009) ("In the event of non-coverage, QBE would not be obligated to defend."). Having timely explained to its insured that the loss was not covered and that the defense was being offered as a courtesy until such time as it was determined by a court that the loss was not covered, Progressive is now entitled to cease paying for the defense of the underlying action.

## **CONCLUSION**

For the reason set out above, Progressive is entitled to judgment declaring that it has no duty to defend or indemnify any of the parties to the underlying action, or any other claim arising out of the underlying accident, and awarding Progressive any other relief that the Court deem just and proper.

Dated: July 14, 2017　　　　　　　　　　BARCLAY DAMON LLP

　　　　　　　　　　　　　　　　　　　By:　　/s/ Laurence J. Rabinovich
　　　　　　　　　　　　　　　　　　　　　　LAURENCE J. RABINOVICH
　　　　　　　　　　　　　　　　　　　*Attorney for Plaintiff*
　　　　　　　　　　　　　　　　　　　1270 Avenue of the Americas, Suite 600
　　　　　　　　　　　　　　　　　　　New York, NY 10022
　　　　　　　　　　　　　　　　　　　Telephone:　(212) 784-5800
　　　　　　　　　　　　　　　　　　　Facsimile:　(212) 784-5777